WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melanie Haswood, et al., | No. CV-14-00253-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| American Polygraph Association, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss. (Doc. 54.) For the following reasons, the Court grants the Motion.

**BACKGROUND**

This case arises from Defendant American Polygraph Association's January 29, 2013 revocation of the Arizona Polygraph School of Science's accreditation. This case has an extensive procedural history that has been detailed at length in a related action, *Wells v. American Polygraph Association*, No. 13-CV-607-PHX-GMS (D. Ariz July 28, 2014) (Docs. 119, 136). Prior to the severance of this action from *Wells*, this court dismissed with prejudice all of Plaintiffs' claims that sought reparations on behalf of the School. (*Id.*). That order left in place the causes of action for which dismissal is now sought.

Relevant for purposes of the instant Motion, Plaintiffs are former students and/or current employees at the Polygraph School of Science, and are alleging federal and state antitrust violations, interference with economic relations, and business

disparagement/defamation stemming from the Polygraph School's loss of accreditation. (Doc. 1.) Plaintiffs contend that the APA's decredation of the Polygraph School was part of a broad predatory and anti-competitive scheme by Defendants to enrich their market share of students seeking education in the specialized field of polygraph technologies. As a result, Plaintiffs have purportedly suffered pecuniary harms as well as injuries to their reputations, lost employment, diminished employment prospects, and denial of professional association membership. Defendants now move to dismiss the Complaint under Federal Rule of Civil Procedure 12. (Doc. 54.)

## ANALYSIS

### I. Legal Standard

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. Application

### A. Standing

As this Court has repeatedly stated, Plaintiffs may not assert rights on behalf of the Polygraph School. Thus, as a preliminary matter, to the extent that some Plaintiffs identify themselves only as employees of the school (*see* Doc. 1 at 13–14), they have alleged no injury-in-fact that is fairly traceable to the APA's decreditation and exclusion of Polygraph School graduates from its membership ranks. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61(1992). Accordingly, the claims of the Plaintiffs who, as employees, have failed to plead any concrete and individualized harm incurred by the allegedly unlawful conduct are hereby dismissed.

### B. Antitrust Violations

Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states . . . is hereby declared to be illegal." 15 U.S.C. § 1. Section 2 prohibits "monopolization, attempts to monopolize, or conspiracies to monopolize interstate commerce. *Id.* § 2. The Arizona Uniform State Antitrust Act, Ariz. Rev. Stat. §§ 44-1402–03, contains similar proscriptions and is interpreted in conformity with federal antitrust laws. *Id.* § 44-1412; *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 609 (9th Cir. 2005).

The antitrust laws are designed for "the protection of competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). To state a claim for relief under federal or state antitrust statutes, plaintiffs must plead more than unlawful behavior and damages. Rather, plaintiffs must also allege causal antitrust injury, which is to say "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977). Only injuries resulting from a decrease in competition qualifies as an antitrust injury. *Id.* The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent

dismissal of the complaint on a defendant's Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 556. In general, professional associations are capable of violating antitrust laws and causing antitrust injuries. *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001).

Plaintiffs allege that the APA Board rescinded the Polygraph School's accreditation to benefit Board Members who have a pecuniary interest in other polygraph schools by preventing graduates of the Polygraph School from seeking licenses and employment in the field of polygraph technologies. (Doc. 1 at 40–41.) Plaintiffs contend that this conduct constitutes an unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Arizona Revised Statute section 44-1402. (*Id.* at 41, 43–44.) Plaintiffs also argue that the APA enjoys monopoly power in accrediting polygraph schools in violation of Section 2 and Arizona Revised Statute section 44-1403. (*Id.* at 43–44.) In their Complaint, Plaintiffs assert three types of injuries to Polygraph School students as a result of the APA's allegedly anticompetitive conduct: (1) students are at a disadvantage because state boards require APA school accreditation for a polygrapher to obtain a license; and (2) the denial of accreditation creates a stigma that affects students' future employment prospects, independent of the licensing issue; and (3) students are excluded from membership to the APA. (*Id.* at 41–43, 46.) Defendants respond that Plaintiffs are unable to state a claim that they suffered an antitrust injury.

The Court need not assess whether the remaining Plaintiffs have sufficiently stated a claim that the APA violated federal antitrust laws because they have inadequately pleaded that their injuries resulted from an anticompetitive consequence of Defendants' allegedly unlawful conduct. First, to the extent that Plaintiffs have been harmed by their inability to obtain a license from a state board to practice in the field of polygraph technologies, such injuries are immune from antitrust action under the doctrines of *Parker v. Brown*, 317 U.S. 341 (1943), and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). In *Parker*, the Supreme Court held that the Sherman Act does not prohibit an anticompetitive restraint imposed by a state as an

1  act of government. *Id.* at 352; *see also Noerr Motor Freight, Inc.*, 365 U.S. at 136
2  ("[W]here a restraint upon trade or monopolization is the result of a valid governmental
3  action, as opposed to private action, no violation of the Act can be made out."). *Noerr*
4  also held that any attempt to influence or petition the government to impose an
5  anticompetitive restraint is similarly immune from antitrust action. *Noerr*, 365 U.S. at
6  136. The complementary principles of *Parker* and *Noerr* have barred antitrust claims
7  against professional accrediting organizations involving the denial of state-issued licenses
8  necessary for employment in the area of the plaintiffs' academic studies. *See, e.g.*, *Bates
9  v. State Bar of Ariz.*, 433 U.S. 350, 359 (1977); *Mass. Sch. of Law at Andover, Inc. v. Am.
10 Bar Ass'n,* 107 F.3d 1026, 1038 (3d Cir. 1997); *see also Zavaletta v. Am. Bar Ass'n,* 721
11 F. Supp. 96 (E.D.Va. 1989); *Brandt v. Am. Bar Ass'n,* No. CIV. A. 3:96–cv–2606D, 1997
12 WL 279762 (N.D. Tex. May 15, 1997).

13 *Bates*, *Massachusetts School of Law*, *Zavaletta*, and *Brandt* involved allegations of
14 antitrust violations by the American Bar Association stemming from the denial of law
15 school accreditation. The ABA is a federally recognized accrediting agency for programs
16 that lead to the J.D. degree. Many states require graduation from an ABA-accredited law
17 school as a prerequisite to taking the bar examination; however, the final authority over
18 bar admission rules rests with the state. *See Bates*, 433 U.S. at 361. Similarly, the APA
19 makes an accreditation decision which it conveys to the states, but, ultimately, it is each
20 state that decides which applicants may obtain a polygraph license, not the APA. Without
21 state action, the APA's accreditation decisions would have no effect on state polygraph
22 licensing board requirements. Although the state boards have apparently chosen to
23 consider APA school accreditation in determining who may obtain a license, this choice
24 is squarely within the regulatory purview of the state and, under *Parker* and *Noerr*,
25 outside the ambit of the Sherman Act.

26 Second, any stigmatic or reputational injuries in the market place stemming from
27 the Polygraph School's loss of accreditation are also precluded. Under *Noerr*, if any loss
28 of prestige is incidental to the injury resulting from governmental restrictions placed on

1 graduates from non-accredited schools, and such restrictions were protected from
2 antitrust attack, the stigma effect has antitrust immunity as well. In this case, Plaintiffs
3 allege that in addition to the injury inflicted by the governmental restrictions on licenses,
4 they are at a competitive disadvantage purely because of the stigma attached to the
5 APA's denial of accreditation. In effect, Plaintiffs argue that in denying accreditation the
6 APA opined negatively about the standard of education Plaintiffs received at the
7 Polygraph School. The Supreme Court rejected a similar argument in *Noerr*, holding

> the District Court found that the purpose of the railroads was to destroy the goodwill of the truckers, among the public generally and among the truckers' customers particularly, in the hope that by doing so the over-all competitive position of the truckers would be weakened, and the railroads were successful in these efforts to the extent that such injury was actually inflicted. The apparent effect of these findings is to take this case out of the category of those that involve restraints through governmental action and thus render inapplicable [our finding that no antitrust claim will lie where governmental action is the proximate cause of the plaintiff's injury]. But this effect is only apparent and cannot stand under close scrutiny. There are no specific findings that the railroads attempted *directly to persuade* anyone not to deal with the truckers.

*Noerr*, 365 U.S. at 142. In the same vein, here, if employers are reluctant to make employment offers to graduates of the Polygraph School, the APA's actions are still protected as incidental to the primary protected injury resulting from the states' decisions not to issue licenses to Plaintiffs. Plaintiffs have not pleaded that the APA attempted to directly persuade any employer or other party not to deal with Polygraph School students. *See id.* Any abstract stigmatization suffered by Plaintiffs, consequently, does not amount to a cognizable injury under the Sherman Act.

Furthermore, the primary basis for the *Noerr* exemption to antitrust liability rests on fundamental First Amendment freedoms. *Id.* at 138. It follows that the mere expression of an opinion that is protected by the First Amendment is likewise entitled to immunity from antitrust liability. *McDonald v. Smith*, 472 U.S. 479, 485 (1985). In *Massachusetts School of Law*, for instance, the court held that the plaintiffs' antitrust claims against the ABA failed because the organization did nothing more than express its

- 6 -

1 viewpoint on the caliber of the law school, which is protected speech and not conduct for
2 which there could be antitrust liability. *Mass. School of Law v. Am. Bar Ass'n*, 937 F.
3 Supp. 435 (E.D. Pa. 1996), *aff'd on other grounds*, 107 F.3d 1026. In reaching its
4 holding, the court reasoned:

> It is axiomatic that the First Amendment protects speech, not action. Thus, the speech component involved in ABA's promulgation of standards is protected by the First Amendment and, because the Constitution trumps the Sherman Act, this speech component cannot be the basis for antitrust liability. However, any conduct associated with the standards is not entitled to First Amendment protection. Put differently, the conduct forming the basis of a restraint of trade or a monopolization is outside the First Amendment's reach. This flows logically from section 1 of the Sherman Act which requires "concerted action that unreasonably restrains trade."
>
> . . .
>
> When an association merely states its position, and a company is stigmatized because of that statement, there is no basis for antitrust liability. ABA's constitutionally protected expression of its views and any resulting stigma that MSL suffers do not amount to ABA conduct on which to establish potential antitrust liability. . . . If stigma results from simple expression, that stigma is incidental to the speech and cannot be the basis for antitrust liability. . . . Antitrust laws do not exist to stifle the effects of speech.

18 *Id.* at 443–44. The court concluded that the publication of an association's views, without
19 more, is protected speech and does not violate the Sherman Act. "Only antitrust *conduct*
20 can trigger antitrust liability. Abstract stigma that flows from the publication of speech
21 protected by the First Amendment is not enough." *Id.* at 445. The facts in *Massachusetts*
22 *School of Law* are sufficiently analogous to the case at bar to make that court's analysis
23 and reasoning applicable here.

24 The APA's accreditation decisions are constitutionally protected expressions of
25 opinion that cannot be the basis for antitrust liability. The Complaint contains no
26 allegations that the APA engaged in any conduct beyond decrediting the Polygraph
27 School that might trigger liability under the Sherman Act. The APA does not prevent
28 employers from hiring graduates of unaccredited polygraph schools, for example, nor

- 7 -

does it restrict its members' ability to teach at unaccredited schools. There are no allegations in the Complaint that the APA takes any punitive action against schools that fall short of its accreditation standards. Thus, any stigma that Plaintiffs have suffered because of the Polygraph School's decreditation by the APA does not provide the necessary offensive conduct for antitrust liability. Even if the APA's rescission of the School's accreditation was done by the Board to eliminate competition for self-interested reasons, such anticompetitive purposes would not strip the APA of its right to publish its views on which polygraph schools employ sound teaching methods. "A construction of the Sherman Act that would disqualify people from taking a public position on matters in which they are financially interested would . . . deprive the government of a valuable source of information" and also "deprive the people of their right to petition in the very instances in which that right may be of the most importance to them." *Noerr*, 365 U.S. at 139–40. In sum, the fact that the APA's accreditation process is respected by states and employers, such that it is apparently relied upon in evaluating graduates seeking employment in the field, does not transform the process itself into an antitrust violation.

Third, Plaintiffs have not plausibly pleaded that their inability to join the APA impermissibly restricts competition. Organizations are generally free to associate, share information, and engage in self-regulation. However, an organization's membership criteria are inherently exclusionary and thereby necessarily restrict competition to some degree. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 500 (1988). Nevertheless, courts are reluctant to find that denial of trade association membership is a *per se* violation of the Sherman Act. *See Fed. Trade Comm'n v. Ind. Fed'n of Dentists*, 476 U.S. 446, 458 (1986). In the absence of any showing that the denial of trade association membership is anticompetitive on its face, courts apply the "rule of reason," under which the "test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." *Id.* The more directly involved a trade association is in its members' business and the extent to which it possesses the power to shape the

1  economic environment of the particular field, the more likely it is that exclusion from
2  membership may produce concrete anticompetitive effects. In comparison, where private
3  associations accomplish their goals by establishing standards for membership that are
4  necessary for successful industry self-regulation, enforcing such standards may actually
5  serve some pro-competitive purpose by increasing the relative market efficiencies. *Allied*
6  *Tube*, 486 U.S. at 501.

7  The APA apparently requires graduation from an APA-accredited institution as a
8  prerequisite to joining. (Doc. 1 at 6.) However, Plaintiffs have not pleaded the
9  competitive necessity of membership in the APA in support of their antitrust claims.
10 Rather, Plaintiffs make only generalized assertions as to the anticompetitive effect of the
11 APA's conduct, which may include their strict membership rules, on their ability to
12 compete for employment in the field of polygraph technologies. The antitrust laws
13 operate to prevent injuries to competition, not injuries to Plaintiffs themselves as
14 competitors in the market. In the absence of any allegations as to the economic
15 disadvantage of APA exclusion to non-members, it is not plausible to believe that the
16 APA as an organization has sufficient market power that review of its membership rules
17 is warranted under the Sherman Act.

18 For these reasons, Plaintiffs cannot prevail on their federal or state antitrust claims
19 because they have not pleaded that they suffered any antitrust injuries for which they are
20 entitled to relief. Defendants' Motion to Dismiss is, accordingly, granted as to Plaintiffs'
21 First, Second, and Third Causes of Action.

22 **C.     Interference With Economic Relations**

23 Plaintiffs next contend that the APA's actions constitute a tortious interference
24 with economic relations under Arizona law. To state such a claim, Plaintiffs must plead:
25 (1) existence of a valid contractual relationship; (2) knowledge of the relationship on the
26 part of the interferor; (3) intentional interference inducing or causing a breach; (4)
27 resultant damage to the party whose relationship has been disrupted; and (5) that the
28 defendant acted improperly. *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10, 106 P.3d

1020, 1025 (Ariz. 2005). The Complaint does nothing more than recite the bare elements of a claim of intentional interference, and falls far short of the requirement of *Twombly* that Plaintiffs allege facts with sufficient specificity to state a claim for relief that is plausible on its face. (*See* Doc. 1 at 45.)

Plaintiffs do allege that Defendant Baranowski sent letters to several students enrolled in the Polygraph School's hybrid curriculum program stating that they would not be approved for APA membership based on their "substandard" education. (*See id.* at 35–36.) They make a similar allegation with respect to Defendant Bennett. (*Id.* at 39.) However, even if these allegations vaguely suggest the existence of a contractual relationship for the provision of education services between Plaintiffs and the School, and attempted interference with that contractual relationship by members of the APA Board, Plaintiffs do not allege that such interference actually induced a breach of contract or that any such breach would have resulted in any harm to them. As this Court has repeatedly advised, Plaintiffs cannot assert damages to the School as their own. Defendants' Motion to Dismiss is granted as to this count as well.

### D. Business Disparagement/Defamation

Plaintiffs' final claim is for defamation against Defendants Cushman and McCloughan. (*Id.* at 45–46.) According to the pleadings, Cushman is the President of the APA, and McCloughan is the organization's Director and the General Chair of the Education Accreditation Committee. (*Id.* at 16, 18.)

To state a claim for defamation under Arizona law, a plaintiff must plead: (1) a false and defamatory statement of and concerning the plaintiff; (2) an unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence on the part of the publisher or "actual malice," depending on the status of the plaintiff as a private or public figure and whether the statement at issue involves a matter of public concern. *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 1, 3, 730 P.2d 178, 180 (Ct. App. 1985) (citing Restatement (Second) of Torts § 558).

/ / /

The Complaint is not clear as to what allegedly false statement the named Defendants propagated. Plaintiffs allege that the APA Board of Directors told students at the Polygraph School that their revocation of the School's accreditation was based on the fact that the School failed an inspection. (Doc. 1 at 34.) However, this statement—if it is meant to serve as the basis of Plaintiffs' defamation claim—is unactionable because it is not reasonably related to Plaintiffs. *See Hansen v. Stoll,* 130 Ariz. 454, 636 P.2d 1236, 1240 (Ct. App. 1981). The Polygraph School is not a party to this lawsuit, and Plaintiffs may not challenge statements, even if untrue and capable of defamatory meaning, on behalf of the institution. Therefore, Plaintiffs' final cause of action must also be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 54) is **GRANTED.** Due to Plaintiffs' repeated attempts to litigate this matter—Plaintiffs' sought to file over ten amended pleadings in *Wells*—this dismissal is with prejudice. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding a district court, may, in its discretion, "deny leave to amend 'due to . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'").

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action and enter judgment accordingly.

Dated this 26th day of February, 2015.

Honorable G. Murray Snow
United States District Judge